UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| **MARLON N. JOYNER,** ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 07-2060 |
| **CITY OF DANVILLE, a municipal** ) | |
| **corporation, et al.,** ) | |
| Defendants. ) | |

# O R D E R

In March 2007, Plaintiff Marlon Joyner filed a Complaint (#1) against Defendants City of Danville, Illinois, the Danville Police Department, Chief Carl Alexander, Sergeant Kenneth Kidwell, and Officer Josh Campbell, and all unknown defendants, alleging constitutional violations. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In May 2010, Defendants filed a Motion for Summary Judgment (#19). Plaintiff filed his Response to Motion for Summary Judgment (#22) and Defendant subsequently filed a Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (#25). After reviewing the parties' pleadings, memoranda, and evidence, this Court **GRANTS** Defendants' Motion for Summary Judgment **(#19)**.

### I. Legal Standard

A court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex,* 477 U.S. at 323.

The Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Because the purpose of summary judgment is to isolate and dispose of factually-unsupported claims, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 322-23; *Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir. 2001).

Rule 7.1(D)(2) of the Local Rules for the Central District of Illinois provides that, when a party opposing summary judgment disputes a purportedly undisputed material fact, he must support his claim by reference to specific evidence. *See* CDIL-LR 7.1(D)(2)(b)(2), stating that "[e]ach such claim of disputed fact shall be supported by evidentiary documentation referenced by specific page." The Local Rules also direct the nonmoving party to "[i]nclude as exhibits all cited documentary evidence not already submitted by the movant." CDIL-LR 7.1(D)(2)(b)(2). As noted in the Local Rules, the consequences for failing to comply are discussed thoroughly in *Waldridge v. American Hoechst Corp.*, 24 F.3d 918. The purpose of requiring strict adherence to the rule is to prevent a court from having to sort through the facts looking for factual disputes. *Id*.

**II. Background**

Here, Plaintiff did not support his denials with reference to any evidence when he responded to Defendants' proposed undisputed facts. When the nonmoving party fails to submit an appropriate response to a statement of undisputed facts, the court may assume that the facts stipulated by the moving party exist without controversy. *Waldridge*, 24 F.3d at 922. Therefore, consistent with Local Rules and case law, the Court will accept as true all proposed facts that Plaintiff did not challenge with reference to specific evidence.

In addition, Plaintiff did not include any documentary evidence to support his response, such as the transcript of the suppression hearing, to which he refers in his argument. Therefore, the Court will not consider his references to the transcript. Finally, he did not present any additional material facts pursuant to Local Rules. *See* CDIL-LR 7.1(D)(2)((b)(5). However, the Court may take judicial notice of the results of the hearing on the motion to suppress.

Based on this evidentiary framework, the undisputed facts are as follows: At relevant times, Defendants Campbell and Kidwell were police officers for the City of Danville and Defendant Carl Alexander was police chief for the Danville Police Department. Alexander was in charge of the training, supervision, and control of Campbell and Kidwell.

On March 23, 2006, Plaintiff was standing outside, talking to a friend in Beeler Terrace, a subsidized housing project in Danville. (Joyner dep., pp. 10-11.) At that time, Defendants Campbell and Kidwell were patrolling an area that included Beeler Terrace. (Campbell dep., p. 10.) Campbell saw Plaintiff and recognized him as someone who had previously been involved with illegal drugs, although he did not remember his name at that time. (Campbell dep., pp. 11, 38.) Campbell saw Plaintiff look at the officers with a surprised look, then reach in his pants pocket and put something in his mouth. (Campbell dep., p. 12.) Campbell did not see what Plaintiff had in his mouth. (Campbell dep., p. 19.) Campbell quickly stopped the police car and, as he was getting out of the car, he told Kidwell that Plaintiff had put something in his mouth. (Campbell dep., p. 17.) He and Kidwell then ran to Plaintiff. Campbell "made [Plaintiff] get on the ground" (Joyner dep., p. 19) and told Plaintiff to "spit it out" (Campbell dep., pp. 17-18). Kidwell pointed his taser at Plaintiff (Kidwell dep., p. 21) and also repeatedly told Plaintiff to "spit it out." (Kidwell dep., p. 20.) Kidwell stated, "if you don't spit it out, I'm going to Tase you." (Kidwell dep., p. 24.) Kidwell did not discharge his taser, nor did any other police officer discharge a taser during this encounter. (Kidwell dep., pp. 23, 38.) Plaintiff eventually spit out a balloon containing crack cocaine. (Kidwell dep., p. 23, Joyner dep., p. 18.)

3

Campbell testified that he has seen other people attempt to swallow drugs. (Campbell dep., pp. 30, 37-38.) On a previous occasion, Campbell had been on foot patrol in Beeler Terrace and saw somebody put something in his mouth; that person swallowed the substance that had been in the bag, leaving only the plastic bag. (Campbell dep., pp. 30, 37-38.) Earlier in March 2006, Campbell was involved in a drug enforcement program that included Beeler Terrace; the program involved watching for illegal drug activity and it resulted in the arrest of about 30 people. (Campbell dep., pp. 39-40.)

Kidwell has been dealing with Plaintiff since 1992 and was aware that Plaintiff associated himself with drugs, drug usage, and drug dealing. (Kidwell dep., p. 19.) Kidwell has arrested Plaintiff in the past. (Kidwell dep., p. 19.)

Kidwell received departmental training in the use of tasers, consisting of less than one hour of in-service training plus training updates. (Kidwell dep., pp. 6-8.)

The Court takes judicial notice of the following information: As a result of the March 23rd encounter, Plaintiff was charged with possession of a controlled substance (Vermilion County case No. 2006-CF-148). The circuit court ruled that probable cause existed. The court subsequently granted Plaintiff's motion to suppress evidence. The docket entry states as follows:

> [C]ity officers were patroling the housing projects, spotted Defendant, saw him turn awy in a "furtive" fashion and put something in his mouth. At this point, the officer did not identify the defendant, had not been called to the area because of any report of criminal activity. The officer ordered Defendant spit out whatever was in his mounth. Ultimately, Defendant was charged with possession. Based on the facts as presented and the law pro-vided, the first question, from which all else follows is whether the initial stop of the Defendant qualifies as a "terry" stop. As noted in the cited cases, the Illinois Supreme Court has previously held that neither a person's mere presence in an area where drugs are sold, nor sudden flight alone with justify a terry stop . . . . What the officers observed in this case was ambiguous at best . . . . [E]ven assuming the terry stop justified, the basis for a frisk in a terry stop is for the protection of the officer and others

> nearby, not to gather evidence. The testimony was, rather, that the officer was concerned there would be a destruction of evid-ence . . . . [T]here has to be more than a "hunch" and in this case, there was no reasonably articulated suspicion that Defendant had or was committing, a criminal offense.

(*Sic*). (Vermilion County case No. 2006-CF-148, docket report of motion hearing dated February 21, 2007.)

Plaintiff's complaint does not list his claims in separate counts. The Court has determined that the complaint alleges the following claims: (1) Defendants Kidwell and Campbell violated Plaintiff's Fourth Amendment rights by arresting Plaintiff without probable cause and searching Plaintiff without probable cause; (2) Kidwell and Campbell used unreasonable force in violation of the Fourth Amendment by "physically assaulting and tackling" (#1, ¶ 9) Plaintiff and threatening to use a taser on him; and (3) Defendants City of Danville and Alexander failed to adequately train and supervise police officers including Kidwell and Campbell regarding the use of tasers.

### III. Analysis

Defendants argue that the Court should grant summary judgment in favor of Defendants Kidwell and Campbell on the constitutional claims because the officers had probable cause to search and arrest Plaintiff and their conduct in doing so was appropriate; alternatively, qualified immunity bars the constitutional claims. In addition, Defendants argue that (1) Defendant Danville Police Department is not a suable entity; (2) no evidence supports the claim against Defendant City of Danville for failure to train; and (3) there is no evidence relating to Defendant Alexander.

Although courts are entitled to strictly enforce local rules, a party's failure to comply with local rules in responding to a motion for summary judgment does not automatically result in summary judgment for the moving party. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995). It remains the movant's burden to demonstrate that no genuine issue of material

5

fact exists and that he is entitled to summary judgment as a matter of law. *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994). Based on the undisputed facts in this case, the Court must now determine whether summary judgment is proper as a matter of law.

### A. The Fourth Amendment Claims
### 1. Probable Cause as to the Fourth Amendment Search and Arrest Claims

Defendants first argue that the officers had probable cause to search and arrest Plaintiff in light of the facts they reiterate as follows: During a routine patrol of an area known to be the site of drug trafficking, Defendants Kidwell and Campbell observed Plaintiff putting something in his mouth immediately after he saw the police officers. The officers knew this was a common technique for hiding drugs. They also were aware that Plaintiff had been involved with drugs in the past, although they did not remember his name when they first saw him. Defendants cited no case law that considered the probable cause assessment in similar factual situations.

Plaintiff disagrees that the officers had probable cause to search or arrest, relying on the fact that the Vermilion County Circuit Court and the Fourth District Court of Appeals have ruled that the officers did not have probable cause to search or arrest Plaintiff. The Court takes judicial notice of the Vermilion County Circuit Court's order on the motion to suppress (Order filed Feb. 23, 2007, in Vermilion County Circuit Court case No. 06-CF-148). That order granted the motion to suppress certain evidence but it did not expressly state that Defendants lacked probable cause to search or arrest Plaintiff; instead it noted that "even assuming the 'Terry' stop was justified, the basis for a frisk in a 'Terry' stop is for the protection of the officer and others nearby, not to gather evidence." (Circuit Court Order, ¶ 7.) The order also stated that "there was no reasonably articulated suspicion that the Defendant [Joyner] had or was committing a criminal offense." (Circuit Court Order, ¶ 8.)

The Seventh Circuit has repeatedly recognized three types of police-citizen encounters: a consensual encounter, an investigatory stop, and an arrest. *See United States v. Scheets,* 188 F.3d 829, 837 (7th Cir. 1999); *United States v. Teslim,* 869 F.2d 316, 321 (7th Cir. 1989); *United States v. Black,* 675 F.2d 129, 133 (7th Cir. 1982). A consensual encounter involves no legally

cognizable restraint on the citizen's liberty and is therefore not a seizure within the meaning of the Fourth Amendment. *United States v. Noble,* 69 F.3d 172, 180 (7th Cir. 1995).

The next type of encounter, an investigatory stop (also commonly referred to as a *Terry* stop) does require justification. Following the Supreme Court's decision in *Terry v. Ohio,* 392 U.S. 1, 24 (1968), an "officer may conduct a brief, non-intrusive detention of a person if the officer has specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime." *Scheets,* 188 F.3d at 837. The sole justification for a search incident to a Terry stop is the protection of the officer and others nearby; gathering evidence is beyond the scope of a proper search. *People v. Harper*, 603 N.E.2d 115, 117 (Ill. App. Ct. 1991).

Finally, an arrest, which "is characterized by highly intrusive or lengthy search or detention," must be based on probable cause to believe that a person has committed or is committing a crime. *Black,* 675 F.2d at 133. Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed or is committing a crime. *People v. Sims*, 736 N.E.2d 1048, 1060 (Ill. 2000); *Black*, 675 F.2d at 133. Thus, courts review probable cause determinations based on the information that was available to the officer at the time of the incident. *Beauchamp v. City of Noblesville, Ind.,* 320 F.3d 733, 743 (7th Cir. 2003). Furthermore, police conduct is judged in terms of what the officer did rather than what he may have called it or thought of it at the time. *United States v. Askew-Bell*, No. 6-CR-660, 2007 WL 1035156, *3-5 (N.D. Ill. Apr. 2, 2007) (unreported). For example, if an officer perceives his conduct as a mere stop, but he makes a full search of the person rather than a mere frisk, the evidence found is admissible only if the officer had probable cause to arrest the person before the search. *Peters v. New York,* 392 U.S. 40, 66 (1968).

When actions by the police exceed the bounds permitted by reasonable suspicion, i.e., a Terry stop, the seizure becomes an arrest and must be supported by probable cause. *Florida v. Royer,* 460 U.S. 491, 506 (1983) (*Terry* stop turned into a de facto arrest without probable cause when suspected drug courier was questioned in an airport and taken to a police office where the suspect consented to a search of his luggage after police retrieved luggage from airline).

In this case, the search of Joyner's mouth could not have been for the protection of the officers or those nearby; therefore, Defendants' actions of searching Plaintiff's mouth in this case exceeded the bounds permitted by reasonable suspicion, i.e., a Terry stop. Thus, the search is constitutionally permissible only if it constitutes a search incident to a lawful arrest. *Id*.

Therefore, the relevant question is whether Defendants were acting within the context of a lawful arrest. Here, Joyner was not engaged in any criminal activity as he stood talking his acquaintance in Beeler Terrace. Defendants Campbell and Kidwell were randomly patrolling the area when they saw Joyner, whom they knew to have been involved with drugs in the past, turn away and put something in his mouth. Neither officer saw what Joyner put in his mouth. Based on Illinois case law, these facts are inadequate to lead a reasonably cautious person to believe that Joyner had committed a crime, thus they do not give rise to probable cause sufficient to justify a warrantless arrest. *See People v. Rainey*, 706 N.E.2d 1062, 1065 (Ill. App. Ct. 1999).

As a result, the Court concludes that Defendants Campbell and Kidwell's conduct of searching Joyner was not supported by probable cause. However, the subsequent arrest for possession was based on the officers' knowledge that Plaintiff had crack cocaine in his possession. Thus, the Court concludes that, after the search, Defendants Campbell and Kidwell had probable cause to arrest Plaintiff for possession. Accordingly, based on Defendants' probable cause argument, the Court grants Defendants' motion for summary judgment as to Plaintiff's unconstitutional arrest claim and denies it as to the unconstitutional search claim.

## 2. Qualified Immunity

Alternatively, Defendants Campbell and Kidwell contend that they are entitled to qualified immunity as to the claims against them in their individual capacities. The Court will consider this argument as it relates to the claims of unconstitutional search and excessive force. Assuming for the sake of argument that Defendants lacked probable cause to arrest, the Court will also consider whether qualified immunity shields Defendants as to the unconstitutional arrest claim.

The doctrine of qualified immunity shields from liability public officials who perform discretionary duties. *Belcher v. Norton,* 497 F.3d 742, 749 (7th Cir. 2007). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). These requirements have been separated into a two-step analysis. First, the court must determine whether the alleged facts, taken in the light most favorable to the nonmoving party, show that the officer's conduct violated a statutory or constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Then, the court must determine whether those rights were clearly established at the time of the alleged violation. *Id*. Only if both prongs of the test are satisfied may the official be liable for monetary damages. *Id*. at 200. Even if an officer lacks probable cause, he may still be protected from liability based on qualified immunity. *See, e.g., Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir.1994) (stating that the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Because "the purpose of qualified immunity is to protect public officials from guessing about constitutional developments at their peril, the plaintiffs have the burden of showing that the constitutional right was clearly established." *Gonzalez v. City of Elgin,* 578 F.3d 526, 540 (7th Cir. 2009). A plaintiff can accomplish this by showing that there is "a clearly analogous case establishing a right to be free from specific conduct at issue" or that "the conduct is so

9

egregious that no reasonable person could have believed that it would not violate clearly established rights." *Id.* (quoting *Smith v. City of Chi.,* 242 F.3d 737, 742 (7th Cir. 2001)); *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000) (stating that determining whether the law is clearly established requires a comparison of the specific facts of the case with the body of law that existed at the time of the alleged conduct).

Here, Plaintiff's brief lacks any reference to an analogous case; therefore, he has failed to carry his burden of establishing that Plaintiff's constitutional right was clearly established by that means. Instead Plaintiff contends that, based on the information Defendants Campbell and Kidwell knew before the search, no officer could reasonably believe that they would be justified in "running up [to] the plaintiff, not saying anything to him, tackling him to the ground, holding him there until another officer arrived to display a less [than] lethal weapon and order[ing] the plaintiff to comply with the officers' demand to search the plaintiff." (#22, ¶ 74.) Plaintiff also states that the officers' speculation that Plaintiff had drugs in his mouth in no way justifies their physical assault and battery of plaintiff or their arrest of Plaintiff after obtaining evidence through the threat of the use of force with a taser. (#22, ¶ 79.)

In retrospect, it appears that Defendants Campbell and Kidwell acted improperly under Illinois law when they put Plaintiff on the ground, ordered him to "spit it out," and pointed a taser at him during their search. The consequences of the officer's action included the suppression of evidence and dismissal of the case. The consequences do not necessarily include civil liability for the officers who erred. Here, in the absence of any case law provided by Plaintiff, Plaintiff must satisfy the more rigorous test of showing that the conduct was "so egregious" that no reasonable person could believe that it would not violate clearly established rights. *Gonzalez,* 578 F.3d at 540. Based on the facts in this case, the Court cannot conclude that Defendants' conduct satisfied that test. Accordingly, the Court grants summary judgment in favor of Defendants Campbell and Kidwell on the Fourth Amendment claims.

### B. Claims against Defendant Danville Police Department

Defendants next argue that the Danville Police Department is not a suable entity. *See Meek v. Springfield*, 990 F. Supp. 598, 601 (C.D. Ill. 1998) (holding that a city's police department is not a suable entity because it does not have a separate legal existence; it is an organizational division within the city). The proper entity is the City of Danville, which is also listed as a Defendant. Plaintiff has not challenged this argument. Accordingly, the Court dismisses the Danville Police Department as a defendant.

### C. Claims against Defendants Alexander and City of Danville

Defendants also argue that Plaintiff has not provided adequate evidence to support the claims of failure to train and supervise alleged against Defendants Alexander and City of Danville.

In support of these claims, Plaintiff responds that both officers testified they received less than an hour of training in the use of a taser and there is a genuine question of material fact as to whether "the amount of training was adequate." (#22, ¶ 80.) Plaintiff also states that there is a genuine issue as to whether the officers were authorized to use a taser to force an individual to comply with the officers' demand to search a body cavity. (#22, ¶ 81.)

The Seventh Circuit Court recently observed that "a municipality may be held liable for a constitutional deprivation under *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)." *Waters v. City of Chi.,* 580 F.3d 575, 580-81 (7th Cir. 2009). To establish municipal liability under Section 1983, however, a plaintiff must present sufficient evidence to show that the constitutional violation resulted from a municipal policy, custom, or practice. *Id.* (citing *Monell,* 436 U.S. at 694). This requirement "distinguish[es] acts of the municipality from acts of employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* "Misbehaving employees are responsible for their own conduct; units of local government are responsible only for their policies rather than misconduct by their workers." *Id.* at 581.

11

It does not necessarily follow that if a police officer has acted improperly, he must have been inadequately trained. Therefore, a failure to train police officers will be characterized as a municipal policy for purposes of municipal liability only in limited circumstances. *Robles v. City of Fort Wayne,* 113 F.3d 732, 735 (7th Cir. 1997). To ensure that isolated instances of misconduct are not attributable to a generally adequate policy or training program, courts require a high degree of culpability on the part of the policymaker. *Cornfeld by Lewis v. Consol. Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). The failure to train must reflect a deliberate or conscious choice by the municipality. *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). The Supreme Court has described this degree of culpability as deliberate indifference; in order for a plaintiff to succeed on his claim that a municipal entity violated his constitutional rights by failing to train its police officers, the plaintiff must establish that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390, 388 ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact"). Thus, one of the elements Plaintiff must establish to defeat summary judgment on this claims is that Defendant City of Danville acted with deliberate indifference when it failed to train its police officers. *Celotex*, 477 U.S. at 323-24 (to avoid dismissal at the summary judgment stage, a plaintiff must establish the existence of each element of his case; a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial).

In determining the adequacy of a training program, the focus must be on the program. *City of Canton*, 489 U.S. at 389. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-91. Thus, "one incident involving the improper administration of a taser is insufficient to establish that the need for training was so obvious that the municipality effectively demonstrated deliberate indifference toward the need

12

for training." *Becker v. Porter County Sheriff's Dep't*, No. 2:06-CV-350 JVB, 2009 WL 500562, *5 (N.D. Ind. Feb. 27, 2009) (unreported); *see also Robles*, 113 F.3d at 736 (stating that the plaintiff could not "show that the City was deliberately indifferent to any need for the further training he espouses" because he had "produced no evidence of a pattern of similar violations or of the City's awareness of that pattern").

Plaintiff has presented evidence of only one incident relating to taser use. In light of the case law, even viewing the facts in the light most favorable to Plaintiff, the evidence before the Court does not establish a genuine issue of material fact regarding whether Defendant City was deliberately indifferent toward the constitutional rights of its citizens. Plaintiff's statement that a genuine question of material fact exists as to whether the amount of training was adequate is also not enough to avoid summary judgment at this point. The Seventh Circuit court has stated that summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence he has that would convince a trier of fact to accept his version of events. *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). Here, Plaintiff failed to establish his claims against Defendants Alexander and City of Danville or to raise a factual issue sufficient to defeat Defendants' motion for summary judgment on those claims. Accordingly, the Court grants Defendants' motion for summary judgment on the failure to train claims.

### IV. Summary

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment **(#19)**. This case is terminated.

ENTER this 24th day of June, 2010.

                                              s/ DAVID G. BERNTHAL
                                                   U.S. MAGISTRATE JUDGE